# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JIMMIE CLAIRE ATKINSON,** an individual, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,** )<br>)<br>  Defendant. ) | **CIVIL ACTION: 2:03-CV-3356-VEH** |

## MEMORANDUM OPINION

Jimmie Claire Atkinson ("Ms. Atkinson") has sued The Prudential Insurance Company of America ("Prudential") under ERISA for breach of duty for failure to pay short term and long term disability benefits. Defendant Prudential has filed a motion for summary judgment on the ERISA claims. Both parties have briefed the matter and all exhibits have been considered. For the reasons stated below, Prudential's motion is due to be **GRANTED**.

## Facts

Ms. Atkinson has group insurance with Prudential from her employment with Barloworld Industrial Distribution ("Barloworld"), where Ms. Atkinson was employed as a secretary. *Plaintiff's Amended Compl.* (doc. #18), p. 1-2; *Defendant's*

1

*Motion for Summary Judgment* (doc. #21), p. 2.  Ms. Atkinson sought disability benefits after stopping working in July 2001 due to several medical conditions, including type II diabetes, hypertension, diabetic neuropathy, and mitral valve prolapse.  *Plaintiff's Response* (doc. #23), p. 3.  In a letter from Prudential dated November 7, 2001, Ms. Atkinson was granted short term disability benefits through November 11, 2001, and asked to provide further documentation regarding her medical history.  *Plaintiff's Response* (doc. #23), Exhibit 1.  In a letter from Prudential dated January 15, 2002, Ms. Atkinson's short term disability benefits were terminated and she was denied long term disability benefits.  *Defendant's Motion for Summary Judgment* (doc. #21), Exhibit A.  Ms. Atkinson argues that she was wrongfully denied benefits under ERISA.  *See Plaintiff's Amended Compl.* (doc. #18).

## Standard of Review for Summary Judgment

Under *Federal Rules of Civil Procedure* 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party moving for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-moving party. *Chapman*, 229 F.3d at 1023, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real*

*Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to

point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a direct verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## Analysis

### I. Standard of Review - ERISA

In 1989, the Supreme Court redefined the standards applied to benefit denial cases under the Employee Retirement Income Security Act of 1974 (ERISA). *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The Court determined that "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. "Where the administrator . . . has discretionary authority to determine eligibility for benefits, a court reviews that determination under the arbitrary and capricious standard."

*Godfrey v. BellSouth Telecomms, Inc.*, 89 F.3d 755 (11th Cir. 1996) (citing *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F.2d 1556, 1559 (11th Cir. 1990)). A heightened arbitrary and capricious standard applies where there is a conflict of interest. "[D]eference . . . is greatly diminished when the claims administrator is acting under a conflict of interest." *Florence Nightingale Nursing Serv., Inc. v. Blue Cross Blue Shield of Alabama*, 41 F.3d 1476, 1481 (11th Cir. 1995). All three standards of review apply "to both plan interpretations and factual determinations." *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1135 (11th Cir. 2004).

## II. Arbitrary and Capricious Review for Discretionary Policies

Determining whether a benefits plan is discretionary requires looking at the language of the policy. "The language conferring discretion on the administrator must be 'express language unambiguous in its design.'" *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997) (quoting *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994)).

In the instant case, the court finds that Prudential's policy is discretionary. Prudential's policy states that disability is determined based on evidence "satisfactory to Prudential," as well as stating that a beneficiary is considered disabled when "Prudential determines" disability based on certain factors. *See Defendant's Motion for Summary Judgment* (doc. #21), Exhibit B, Policy, pp. 11, 17, 21, 34. This is the

type of language that expressly and unambiguously confers discretion on Prudential to determine if a policyholder is entitled to benefits under their plan. Additionally, Ms. Atkinson does not dispute the issue of the policy language, nor does she indicate that any standard of review other than arbitrary and capricious should be used. *See Plaintiff's Response* (doc. #23). Therefore, as the policy language confers discretion on Prudential to determine who is eligible for benefits and there is no dispute on this point, the standard of review of Prudential's denial of benefits determination is arbitrary and capricious.

### III. Heightened Arbitrary and Capricious Review

"In determining whether the denial of . . . [a claim] was arbitrary and capricious, 'the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.'" *Dyce v. Salaried Employees' Pension Plan of Allied Corp.*, 15 F.3d 163, 166 (11th Cir. 1994) (quoting *Jett. v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989)). However, the arbitrary and capricious standard is heightened when a conflict of interest is present. In that case, "'the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest.'" *Florence Nightingale*, 41 F.3d at 1481 (quoting *Brown*, 898 F.2d at 1566). While a conflict of interest

lessens the deference given to the claims administrator, it is only one factor to be considered in the arbitrary and capricious standard of review. *See Lee*, 10 F.3d at 1552.

In the instant case, Ms. Atkinson correctly argues that a conflict of interest exists because a Prudential employee makes the determination as to whether Prudential must pay benefits on a Prudential plan. "[A] 'strong conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims.'" *Newell v. Prudential Ins. Co. of America*, 904 F.2d 644, 650-51 (11th Cir. 1990) (quoting *Jader v. Principal Mutual Life Ins. Co.*, 723 F. Supp. 1338, 1343 (D. Minn. 1989)). "The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate." *Newell*, 904 F.2d at 651. Prudential does not claim that one of its own employees did not make the determination to deny benefits. Prudential only argues that it is not improper for employees of Prudential to make benefit determinations.[1] *See Defendant's Reply* (doc. #24), p. 3. Therefore, because a conflict of interest exists, use of the heightened

---

[1] The court recognizes that it is common for insurance companies to use their own employees to review claims. While this certainly is not an improper practice, the dual role of fiduciary and claims administrator creates a conflict of interest for purposes of review under ERISA, and Prudential does not dispute this point. *See Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132 (11th Cir. 2004); *Brown v. Blue Cross Blue Shield of Alabama*, 898 F.2d 1556 (11th Cir. 1990); *Newell v. Prudential Ins. Co. of America*, 904 F.2d 644 (11th Cir. 1990).

arbitrary and capricious standard of review is proper in this case.

## IV.  Application of the Heightened Standard

*Williams v. BellSouth Telecomms., Inc.* provides a framework for review of an administrator's decision under ERISA.  Ultimately, the analysis requires up to three steps: (1) determining whether the claims administrator's decision was *de novo* wrong; (2) determining whether the claims administrator's decision was reasonable; and (3) applying the heightened arbitrary and capricious standard if there is a conflict of interest.  *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004).  The court will undertake review of Prudential's denial of benefits following this framework.

## A.  Whether the Decision Was Wrong

Determining whether the decision was wrong requires a *de novo* review of Prudential's denial of Ms. Atkinson's benefits.  Prudential argues that it denied Ms. Atkinson her benefits for two reasons: (1) because she worked with her medical conditions (at a sedentary job) prior to filing for disability; and (2) because there was no significant change in her condition after filing for disability.  Ms. Atkinson argues: (1) that her job is not sedentary in nature; (2) that her conditions worsened over time; and (3) that Prudential failed to properly review the medical evidence she submitted. The exhibits before the court are comprised solely of the practice notes of Dr. James

9

H. Crenshaw, Ms. Atkinson's primary treating physician, as well as the notes from Prudential's review of Ms. Atkinson's claim.[2] An independent medical examination (IME) conducted by Dr. Hisham Hakim is referred to by Prudential, but no copy of Dr. Hakim's review is included in the exhibits. *See Defendant's Motion for Summary Judgment* (doc. #21), p. 4.

Dr. Crenshaw's treatment notes diagnose and discuss approximately twenty different health problems during a period from March through December, 2001. *See Plaintiff's Response* (doc. #23), Exhibit 3. Dr. Crenshaw states multiple times that he believes Ms. Atkinson is "totally and permanently disabled." His treatment notes indicate that the severity of Ms. Atkinson's medical problems fluctuated over time, sometimes stabilizing, other times getting worse. *See id.* On the contrary, Prudential's employees' review of Dr. Crenshaw's treatment notes state that Ms. Atkinson's conditions are either "not disabling" or "not disabling unto [themselves]." *See Defendant's Motion for Summary Judgment* (doc. #21), Exhibit C. To support her allegations, Ms. Atkinson points only to the treatment notes of Dr. Crenshaw. To

---

[2] One other piece of evidence mentioned in the parties' briefs is not considered here. Ms. Atkinson refers to a letter from Dr. James B. Kelly, an ophthalmologist, regarding her eye condition. *See Plaintiff's Response* (doc. #23), Exhibit 2. This letter is dated February 20, 2002. Prudential's last set of review notes is dated January 14, 2002 and the letter of denial of claims from Prudential to Ms. Atkinson is dated January 15, 2002. Therefore, the Court cannot consider the information in Dr. Kelly's letter because the Court may only look at the information that was before the claims administrator at the time of the review. *See Dyce*, 15 F.3d at 166.

support Prudential's allegations, Prudential points only to their in-house review.[3]

Based on the limited exhibits before the court, the court finds that there are genuine issues of material fact regarding whether Prudential's denial of benefits was wrong. Dr. Crenshaw's treatment notes, which consistently conclude that Ms. Atkinson is "permanently and totally disabled" directly conflict with Prudential's in-house notes, which state that none of her conditions are "disabling" or "disabling unto themselves." Without additional supporting information, and construing the facts in the light most favorable to the non-moving party, the court cannot conclusively determine that Prudential's review was correct. Therefore, the court must address the second step of the analysis.

### B. Whether the Decision Was Reasonable

The second step of the analysis requires using the more deferential arbitrary and capricious standard to determine if there was a reasonable basis for Prudential's decision. *See Williams*, 373 F.3d at 1138. The court finds that Prudential had a reasonable basis for denying Ms. Atkinson's claims. First, Dr. Crenshaw's notes

---

[3] The court is concerned with the lack of additional exhibits and information on these points. Dr. Kelly's treatment notes and Dr. Hakim's IME report are notably absent from the exhibits, as is information regarding Ms. Atkinson's employment with Barloworld and the daily requirements of her job. Furthermore, the Court is unable to make any determinations regarding Dr. Hakim's report. Although Ms. Atkinson does not dispute that she visited Dr. Hakim, there is no evidence regarding what level of disability Dr. Hakim believed might (or might not) stem from Ms. Atkinson's medical conditions.

indicate in several places where one or more of Ms. Atkinson's conditions had stabilized or were improving, including her obesity, diabetes, and hypertension. *See Plaintiff's Response* (doc. #23), Exhibit 3. Additionally, Dr. Crenshaw noted where medications Ms. Atkinson was taking were also helping to improve or stabilize her condition. *See id.* Second, Prudential refers to Dr. Hakim's review. Ms. Atkinson denies neither that she went to see Dr. Hakim nor the results of the review; she only states that she has never seen those results. Although the court draws no conclusions about the content of Dr. Hakim's report, what is important is that Prudential had Ms. Atkinson submit to an IME[4] in order to obtain an additional medical review of Ms. Atkinson in order to assist them in determining her benefits. This indicates that Prudential had an independent source of review. Third, the court notes the lack of evidence regarding Ms. Atkinson's employment at Barloworld and that there is no evidence, other than Dr. Crenshaw's treatment notes, to support the assertion that her condition worsened over time. Ms. Atkinson does not dispute Prudential's claim that she performed her job with the listed medical conditions prior to filing for disability benefits. Reviewing the evidence that was before Prudential at the time they made their determination and regardless of evidence to the contrary, there is no genuine issue of material fact regarding the reasonableness of Prudential's determination to

---

[4]Independent Medical Examination.

deny Ms. Atkinson benefits.  *See Jett*, 890 F.2d at 1139; *see also Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 (11th Cir. 1997) (concluding decision to terminate benefits "reasonable" and affirming summary judgment in favor of plan, notwithstanding some evidence supporting plaintiff's disability).  At this juncture, finding a genuine issue of material fact as to whether the determination was wrong and finding Prudential's decision reasonable, the court must progress to the third step of the analysis.

### C.  Whether the Decision Was Reasonable Under Heightened Review

The heightened arbitrary and capricious standard of review falls between the *de novo* standard of review and the arbitrary and capricious standard of review.  *See Williams*, 373 F.3d at 1137.  Application of this standard is required, at this point, where there is a conflict of interest.  As discussed above, the court has already found that Prudential has a conflict of interest in having its own employees make claims determinations.  Therefore, the court must review the denial under the heightened standard.

Although the standards of review for ERISA benefit-denial claims apply to both plan interpretation and factual determination cases, there has been little application of the "wrong but reasonable" scenario to a factual determination case, such as this one. A similar issue was addressed in *Wise v. Hartford Life and Accident*

*Ins. Co.*, 360 F. Supp. 2d 1310 (N.D. Ga. 2005). The following standard was articulated:

> [A] conflicted plan administrator may carry its burden in a suit challenging a "wrong but reasonable" factual determination if it can demonstrate that the opinions and evidence it relied on denying the plaintiff's claim were, viewed both from a qualitative and quantitative perspective, at least as objectively reliable as the countervailing opinions and evidence then before it. By demonstrating that it chose to follow what it reasonably perceived as equally or more objectively reliable data, the insurer substantially ameliorates any fears that its decision was motivated by self-interest rather than by a good faith effort to exercise its discretion to interpret and apply the plan. Should the administrator meet this burden, the plaintiff can then prevail only if he demonstrates that the decision was arbitrary and capricious by "other measures."

*Id.* at 1523. The court, thus far finding the case at bar to fall in the "wrong but reasonable" category, will apply this standard to the heightened review. In applying this standard, the court finds that there is no genuine issue of material fact on this issue, and therefore that Prudential has met its burden.

The evidence in the record shows that Prudential relied primarily, if not entirely, on Dr. Crenshaw's treatment notes, supplied by Ms. Atkinson, in reaching its decision. Surely Ms. Atkinson does not argue that her treating physician's data is not "reliable data." Prudential additionally had an IME conducted with Dr. Hakim. Even though there is some question as to what, specifically, that review showed, there is no dispute that Prudential had an independent doctor - not an employee of

Prudential - conduct a review of Ms. Atkinson's health, which speaks to Prudential's attempt to avoid making a decision entirely out of self-interest. Unfortunately, the court cannot comment on the "quantitative" nature of the data before Prudential, because only two sets of records (Dr. Crenshaw's and Prudential's) were produced; however, Dr. Crenshaw's records appear to be the majority of what Prudential had in front of them to review.

Furthermore, Ms. Atkinson rests her conflict of interest argument only on the fact that an employee of Prudential reviewed the claim. As stated above, this is not an uncommon practice, nor should Prudential be punished for implementing a discretionary policy, which is their right, by holding that every benefit denied by an employee or agent of Prudential is motivated by self-interest. The conflict of interest aspect of the arbitrary and capricious test is meant to be a factor, not a dispositive finding.

The court does not find that Prudential denied the claim solely out of self-interest, and Ms. Atkinson has not met her burden of showing, under *Wise*, that the review was arbitrary and capricious in some other manner. There is also no genuine issue of material fact on this issue as Ms. Atkinson has failed to meet her burden of proof regarding this standard. Therefore, Prudential's decision is considered reasonable under the heightened review standard and is therefore entitled to summary

judgment.

## Conclusion

The court finds that although there is a genuine issue of material fact regarding whether Prudential's denial of benefits was wrong, the defendant, Prudential, is entitled to summary judgment because there exists no genuine issue of material fact as to whether the denial of benefits was reasonable under both the regular and heightened arbitrary and capricious standards of review. Therefore, Prudential's motion for summary judgment (doc. #21) is due to be granted. A separate order will be entered.

**DONE** this the 28th day of February, 2006.

                                              **VIRGINIA EMERSON HOPKINS**
                                              United States District Judge